BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED
MAY 26 1976
PATRICIA D. HOWARD
CLERK OF THE PANEL

IN RE McDONNELL DOUGLAS "WILD WEASEL AN/ )
APR-38" CONTRACT LITIGATION             )   DOCKET NO. 236

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON *, WILLIAM H. BECKER, JOSEPH S. LORD, III,
STANLEY A. WEIGEL *, AND ANDREW A. CAFFREY, JUDGES OF
THE PANEL

PER CURIAM

The "Wild Weasel AN/APR-38" is an electronic counter-measures system for fighter aircraft and is designed to detect and react to enemy air defenses. McDonnell Douglas Corporation holds the prime contracts from the United States Air Force for the design, development, testing and evaluation of the Wild Weasel system for use in the F-4E jet aircraft, as it did for the Wild Weasel system used in the F-4D aircraft.

McDonnell in turn contracted with Itek Corporation for the development of a Special Warning Receiver (SWR), which is a subsystem of the overall Wild Weasel system, at least in so far as that system was being developed for the F-4E.[1/] The SWR scans electronically over a predetermined frequency

---

\* Judges Robson and Weigel were unable to attend the Panel hearing and, therefore, did not participate in the consideration or decision of this matter.

1/ The limited material available to the Panel contains contradictory contentions regarding the SWR's presence in the Wild Weasel system designed for the F-4D.

range and is programmed to detect specific signals, and then relay this information to another subsystem for further processing. After the information is analyzed in that subsystem, it is displayed to the pilot of the aircraft on still another subsystem known as the Control Indicator Set (CIS). Loral Corporation was under contract with McDonnell to develop the CIS. [2]

On August 22, 1973, Loral filed an action in the Southern District of New York against McDonnell for breach of contract. Loral alleges that its commitment to develop the CIS was impossible to perform because McDonnell failed to disclose certain knowledge in its possession. McDonnell has counterclaimed for breach of contract on the ground that Loral failed to comply with its obligations under the contract.

On September 15, 1975, McDonnell filed a breach of contract action in the Eastern District of Missouri against Itek for alleged failure to satisfy its contractual commitments. Itek has counterclaimed for, inter alia, reformation or rescission of its contracts with McDonnell on theories of technical, commercial and legal impossibility of performance. The counterclaim includes a breach of contract count for

---

[2] The Loral-CIS was apparently in the design for the F-4D Wild Weasel system. There is some dispute among the parties over whether it was subsequently incorporated in the design for the F-4E Wild Weasel system.

- 3 -

McDonnell's alleged failure to disclose certain superior knowledge. In addition, Itek has added the Secretaries of Defense and the Air Force as defendants to the counterclaim.

This matter is before the Panel on Itek's motion to transfer the Itek action to the Southern District of New York for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. §1407, with the Loral action pending in that district. All other parties oppose the motion. Although there may be some minimal common questions of fact between these two actions, we find that the requested transfer would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation and, accordingly, we deny the motion.

Itek premises its arguments in support of its motion primarily on a claimed factual commonality between these actions arising from the technical relationships between the SWR and the CIS. Because these subsystems interface with a common computer subsystem, Itek maintains, they are so closely linked that the required analysis of the SWR and the CIS in the respective actions will necessarily overlap. Itek contends that although the Loral-CIS and the Itek-SWR were perhaps designed for different aircraft, this difference is of no consequence since it is the overall Wild Weasel system itself which provides the basis for commonality. Itek insists

that in the absence of transfer, discovery concerning this overall system will be needlessly duplicated.

Itek also argues that a comparison of the relevant allegations in the complaints reveals a substantial area of overlap relating to McDonnell's alleged failure to disclose knowledge in its possession stemming from certain study contracts which it had commissioned. This overlap is another compelling reason to order transfer, Itek asserts.

Although Itek recognizes that discovery in <u>Loral</u> is in its late stages,[3/] Itek nonetheless urges that substantial economies can be achieved by combining the two actions for pretrial proceedings under Section 1407. For example, Itek suggests, the discovery had in the New York action could be made available to it and thus short-cut the inevitable lengthy discovery in its action.

While we understand Itek's concerns, on the basis of the record before us, we cannot find any substantial commonality between these actions. Certainly, discovery in each action must involve some data concerning the overall Wild Weasel system. But we are persuaded that the Loral-CIS and the Itek-SWR are essentially different products and therefore raise predominantly different factual issues. Indeed, counsel

---

[3/] Indeed, the New York court has set May 1, 1976 as the cutoff date for intra-party discovery in <u>Loral</u>.

for Loral maintains, and we have no reason to doubt him, that his intensive study of the CIS during the two and one-half year history of <u>Loral</u> had failed to even make him aware of the SWR prior to the proceedings before the Panel. Moreover, we are heavily influenced by the position of the Secretaries of Defense and the Air Force, who, in our view, have the best vantage point from which to judge the similarity of the Loral-CIS and the Itek-SWR, and who represented to us that, other than for a common computer interface, these two subsystems are unrelated.

Even assuming, however, that we overcame the hurdle of commonality, there is another highly persuasive reason which mandates denial of the motion to transfer. <u>Loral</u> has been pending for close to two and one-half years and is rapidly approaching trial, while <u>Itek</u> was only recently filed. And it is possible that a transfer at this time might delay the trial of <u>Loral</u>. We are not convinced that such a delay would be justified by a concomitant increase in the expeditiousness with which <u>Itek</u> could be resolved. This factor, coupled with the fact that only two actions are involved here, leads us to conclude that transfer under Section 1407 would surely not promote the just and efficient conduct of the litigation. <u>Compare</u> <u>In re Air Crash Disaster at Falls City, Nebraska, on August 6, 1966</u>, 298 F. Supp. 1323, 1324 (J.P.M.L. 1969), <u>with</u> <u>In re Scotch Whiskey Litigation</u>, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

- 6 -

IT IS THEREFORE ORDERED that the motion to transfer the action listed on the following Schedule A and pending in the Eastern District of Missouri to the Southern District of New York for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. §1407, with the action listed on Schedule A and pending in that district, be, and the same hereby is, DENIED.

| | |
|---|---|
| SCHEDULE A | DOCKET NO. 236 |
| <u>EASTERN DISTRICT OF MISSOURI</u> | |
| McDonnell Douglas Corp. v. Itek Corp. | Civil Action No. 75-809(c)(1) |
| <u>SOUTHERN DISTRICT OF NEW YORK</u> | |
| Loral Corp. v. McDonnell Douglas Corp. | Civil Action No. 73 Civ. 3649 |